IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

INSTITUTO DE EDUCACION
UNIVERSAL, INC. and ANGEL
RUIZ-RIVERA, et al

    Plaintiffs                 CIVIL NO. 98-1300 (JAG)

    v.

GREAT LAKES HIGHER EDUCATION
GUARANTY CORPORATION, et al

    Defendants

## OPINION AND ORDER

Plaintiffs Instituto de Educación Universal ("IEU"), a non-profit institution organized under the laws of Puerto Rico, and Angel Ruiz-Rivera ("Ruiz-Rivera"), brought suit against defendant Great Lakes Higher Education Guaranty Corporation ("Great Lakes") and other co-defendants, seeking damages based on the alleged publication of defamatory statements. Defendants have moved for summary judgment. The Court grants the motion.

### FACTUAL BACKGROUND

Plaintiffs claim that Great Lakes defamed them when it published to certain IEU students that IEU had lost its eligibility to administer Title IV financial aid funds. Great Lakes sent letters to Josefina Quiñones-García ("Quiñones-García") and 13 other IEU students notifying them that it would deny their student loan applications [*because*] the United States Department of


AO 72A
(Rev.8/82)



Civil No. 98-1300 (JAG)                                                                  2

Education ("USDE") had terminated IEU's eligibility to participate in student financial assistance programs authorized under Title IV of the Higher Education Act of 1965. In order to place these issues in context, we set forth the procedural posture of the case.

On January 24, 1997, Administrative Law Judge Richard F. O'Hair of the USDE issued an order terminating IEU's eligibility to participate in student financial assistance programs authorized under Title IV. (Docket No. 87, Statement of Uncontested Material Facts at 6). IEU appealed ALJ O'Hair's decision before Richard W. Riley, then-Secretary of Education. On February 19, 1997, the USDE notified Great Lakes of its decision to terminate IEU's eligibility to administer Title IV programs. <u>Id.</u> The letter stated in part:

> This information has been provided to you so that you may take any actions necessary to implement the termination, including applicable close-school procedures. Please notify anyone not on the distribution list who you feel should be notified.

On March 26, 1997, Great Lakes notified Quiñones-García that it could not process her loan request because IEU "had their eligibility withdrawn by the USDE." <u>Id.</u> at 6-7.

On May 30, 1997, the USDE informed Great Lakes that IEU was still an eligible institution, pending the appeals process. <u>Id.</u> On January 9, 1998, Secretary Riley reversed ALJ O'Hair's ruling, setting aside the determination as to IEU's eligibility.[1]

---

[1]   The Secretary did order IEU to reimburse $2.76 million to the USDE and to pay a $150,000 fine. <u>Id.</u>

Civil No. 98-1300 (JAG)                                                    3

Great Lakes filed a motion for summary judgment contending that the plaintiffs have failed to establish an actionable defamation claim because the letter was privileged pursuant to Sections 4 and 5 of Puerto Rico's Libel and Slander Act of 1902. 32 L.P.R.A. §§ 3144, 3145.[2] (Docket No. 87, Memorandum in Support of Motion For Summary Judgment at 8). Plaintiffs filed a cross-motion for summary judgment. They argue that the publications were false since IEU never lost its eligibility and the defamation allegedly caused IEU's eventual demise. (Docket No. 88, Memorandum in Support of Plaintiffs Motion in Opposition to Defendants Motion For Summary Judgment at 29-30). Great Lakes, on the other hand, argues that even assuming that the publication requirement was met, the publication was privileged under the qualified common law

---

[2]   32 L.P.R.A. § 3144 states that:

[a] publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding or **in any other proceeding authorized by law**. A publication or communication shall not be presumed to be malicious when made:

First. In the proper discharge of an official duty.

Second. In a fair and true report of a judicial, legislative or other proceedings, or of anything said in the course thereof.

Third. To a Commonwealth official upon probable cause with the intention of serving the public interest or of securing redress of a private wrong.

(Emphasis Supplied).

Civil No. 98-1300 (JAG)                                                        4

privileges codified in the Libel and Slander Act of 1902. Great Lakes further contends that plaintiffs failed to establish a proximate cause between the alleged publication and the claimed damages. (Docket No. 87, Memorandum in Support of Motion For Summary Judgment at 9). Great Lakes maintains that the dramatic drop in student enrollment at IEU started well before it sent the letters.

## DISCUSSION

I.  The Standard for Summary Judgment

The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56(c); see Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The role of summary judgment in a civil action is commonplace - "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." McCarthy v. Northwest Airlines, 56 F.3d 313, 314 (1st Cir. 1995), citing Wynne v. Tufts University School of Medicine, 976 F2d 791, 794 (1st Cir. 1992). This device allows the courts and litigants to avoid full blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting the court to husband scarce judicial resources. McCarthy, 56 F.3d at 315. The

AO 72A
(Rev.8/82)

Civil No. 98-1300 (JAG) 5

party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has engaged the gears of rule 56, the party against whom the motion is directed can shut down the machinery only by showing that a trial-worthy issue exists. As to issues on which the opposing party bears the ultimate burden of proof, that party cannot merely rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Suarez v. Pueblo International, Inc., 229 F.3d 49, (1st Cir. 2000).

Not every factual controversy is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under governing law. By like token, an issue is genuine when based on the evidence, a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Further, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id. at 256. Consequently, "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

AO 72A
(Rev.8/82)

To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation."

II. Puerto Rico Defamation Law

The three principal sources of protection against defamatory statements in Puerto Rico are (1) Article II, Section 8 of the Puerto Rico Constitution, which recognizes the right of every person "to the protection against abusive attacks on his honor, reputation and private or family life"; (2) the Libel and Slander Act of 1902, which establishes a private cause of action for libel and slander; and (3) Article 1802 of the Puerto Rico Civil Code. See Giménez-Álvarez v. Silen-Maldonado, 131 D.P.R. 91, 97-98 (1992); Porto v. Bentley P.R., Inc., 132 D.P.R. 331, 343-44 (1992).

In Puerto Rico, actions for defamation may arise under the Libel and Slander Act of 1902, 32 L.P.R.A. §§ 3141-3149, and under Article 1802 of the Puerto Rico Civil Code, 32 L.P.R.A. § 5141. Gierbolini-Rosa v. Banco Popular de P.R. 930 F. Supp. 712, 716 (D.P.R.1996), aff'd 121 F.3d 695 (1st Cir. 1997). The modern development of Puerto Rico law on libel and slander has been under the Civil Code, and not under the libel and slander statutes. As

AO 72A
(Rev.8/82)

Civil No. 98-1300 (JAG)                                                        7

a result, the courts have extended the traditional defenses under the Libel and Slander Act to actions arising under Article 1802. See Gierbolini-Rosa, 930 F. Supp. at 717. The codification of the Libel and Slander Act of 1902 included the qualified common law privilege for communications made under an official duty or in the course of a judicial proceeding. Id. This qualified immunity doctrine is grounded on the public policy that strives to "conciliate the interest in individual reputation and other likewise legitimate interest." See Porto, 132 D.P.R. at 353, citing Cortés-Portalatín v. Hau Colón, 103 D.P.R.734, 739 (1975).

A privileged communication is one which, except for the occasion and circumstances under which it was made, would be defamatory and actionable. See Porto, 132 D.P.R. at 353, citing Díaz v. P.R. Ry., Lt. & P. Co., 63 D.P.R. 808, 811 (1944). The communication may be false, but the privilege remains. Porto, 132 D.P.R. at 353, citing Quiñones v. J.T. Silva Banking & Commercial Co., 16 D.P.R. 696 (1910); Cortés Portalatín, 103 D.P.R. at 739. In Porto, the Puerto Rico Supreme Court, following the Restatement of the Law (Second) of Torts §§ 594-598, stated that a qualified privilege includes all *bona fide* communications on any subject matter in which the author has any interest or with respect to which he has a duty to perform to others.

Plaintiffs argue that the availability of Title IV federally funded financial aid programs is an essential component in the

Civil No. 98-1300 (JAG)                                                              8

operation of an institution. Therefore, an allegation containing false information about an institution's eligibility status, such as the one included in Great Lakes' letter, could have a potentially harmful effect among the student community. Unfortunately, that is not enough for IEU to prevail here.

The qualified common law privilege under Puerto Rico law limits the extent to which a plaintiff can establish an actionable claim for libel. There are two types of privileges applicable to defamation cases: absolute and qualified privileges. Absolute privileges are properly classified as immunities since they are based on the personal position or status of the actor. See Vargas v. Royal Bank of Canada, 604 F.Supp. 1036, 1043 (D.P.R. 1985).

> These "absolute privileges" are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interest.

Restatement (Second) of the Law of Torts § 584 at 243 (1977).

Conditional or qualified privileges, on the other hand, seek to protect the circumstances in which a statement is made.

> They are more properly classified as privileges, since they arise out of the particular occasion upon which the defamation is published. They are based upon a public policy that recognizes that true information be given whenever it is reasonably necessary for the protection of the actors own interests of a third person or certain interests of the public. In order that this information may be freely given it is necessary to protect from liability those who, for the purpose of furthering

Civil No. 98-1300 (JAG)                                            9

>   the interest in question, give information which,
>   without their knowledge or reckless disregard as to
>   its falsity, is in fact untrue.

Restatement (Second) of the Law of Torts § 584 at 243-244 (1977).

Great Lakes argues that the information contained in the letters sent to IEU students is covered by the privileges codified in 32 L.P.R.A. § 3144, as a publication made in a proceeding authorized by law.

Once the defendant has raised a colorable claim of privilege, the burden shifts to the plaintiff to show that the defendant has abused the privilege. Gierbolini-Rosa, 930 F.Supp. at 718, citing López de Tord & Zayas Pizarro v. Molina, 38 P.R.R. 737, 751-752 (1928), and Franco v. Martínez, 29 P.R.R. 221, 224 (1921). Plaintiffs have failed to satisfy their burden. After reviewing the record, the Court finds that the plaintiffs fail to address the issue of abuse of privilege and rely merely on self-serving conclusory allegations and insufficient speculation to support their position.

The actions undertaken by Great Lakes were authorized by law and privileged under Puerto Rico law. The record suggests no evidence of abuse of privilege. Accordingly, the Plaintiff's claim must be dismissed.[3]

---

[3] In the alternative, Great Lakes argues that Plaintiffs failed to establish a proximate causal link between the alleged defamatory publications and the claimed damages. Although Plaintiffs rely on an alleged agreement between IEU and its students that would have

Civil No. 98-1300 (JAG) 10

## CONCLUSION

Plaintiffs have failed to defeat the applicable privileges that protect Great Lakes' communications to IEU's students. These communications were authorized by law and therefore privileged. The Court grants summary judgment in Great Lakes' favor. Partial judgment shall enter accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 28th day of August, 2001.

JAY A. GARCIA-GREGORY
United States District Judge

---

afforded IEU a chance to survive, the record shows no evidence, other that Plaintiff's self-serving allegations, that supports the existence of such an agreement. Plaintiffs failed to present specific evidence, such as affidavits from or documents showing the existence of an agreement that could establish the causal link between the alleged defamatory publications and the eventual closing of IEU's operations. The parties agree that as of January 1997, IEU was not able to meet its payroll and was nearly a defunct institution. Most importantly, they agree that IEU's financial difficulties were not related or attributable to defendants's actions. In light of the Court's decision that the communication was privileged under Puerto Rico law, we need not address this issue.